**WO**

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| FAMILY LEADERSHIP FOUNDATION, an Arizona nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; NATIONWIDE RETIREMENT SOLUTIONS, INC.,<br><br>Defendants. | Case No. 06 CV-678-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendant the United States's Motion to Dismiss for lack of subject matter jurisdiction (the "Motion"), pursuant to Fed.R.Civ.P. 12(b)(1). (Dkt. 14.) The Motion has been fully briefed by both parties. (Dkts. 15, 17, 22-24.) After considering the parties' briefs, the Court issues this Order.

## **BACKGROUND**

Plaintiff Family Leadership Foundation ("Plaintiff") is a tax-exempt entity under 26 U.S.C. §501(c)(3) and, as such, was not subject to taxation on its income for the 1999 tax year. (Dkt. 1 at ¶7.) On or about May 7, 1999, Plaintiff received a $145,216.97 charitable donation from decedent Emmett Turner, in the form of a death benefit payable from the decedent's participation in an Arizona State Deferred Compensation Program. (Id. at ¶¶ 8-9.) Plaintiff

alleges that Nationwide Retirement Solutions, Inc. ("Nationwide"), the payor, withheld $39,986.62 in federal income tax from the payment provided to Plaintiff and that, because it is a non-profit entity, the withholding was improper. (Id. at ¶ 9.)

Plaintiff alleges that it had no taxable income in 1999, and therefore was not under an obligation to file a 1999 federal income tax return. (Id. at ¶¶ 11-12.) Plaintiff further alleges that, if it had been obligated to file a 1999 tax return, the return would have been due on May 15, 2000, and Plaintiff would have requested an automatic six-month extension to file the return on November 15, 2000. (Id. at ¶ 12.) Plaintiff neither filed a 1999 return, nor requested an extension. (Id.)

On November 17, 2003, Plaintiff filed a federal income tax return on Form 990-T with the Internal Revenue Service (the "IRS"), claiming a refund of the $39,986.62 in taxes Nationwide provided to the IRS in 1999. (Id. at ¶ 13.) On or about March 8, 2004, the IRS disallowed Plaintiff's claim for a refund. (Id. at ¶ 15.) As a result, Plaintiff filed this action against the United States "for the recovery of federal income tax and interest erroneously or illegally assessed and collected." (Id. at ¶ 4.)

## STANDARD OF REVIEW

Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint to matters of public record without converting the motion into one for summary judgment. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). When considering a factual-based motion to dismiss pursuant to Rule 12(b)(1), the court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." See McCarthy

v. United States, 850 F.2d 558, 560 (9th Cir. 1988). The material factual allegations of the complaint, however, are assumed to be true. See Savage v. Glendale Union High Sch. Dist. No. 205, Maricopa County, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

## DISCUSSION

The United States moves to be dismissed from this case with prejudice because "the [P]laintiff's allegations fail to give rise to a waiver of sovereign immunity under 26 U.S.C. §7422(a)," and thus the Court lacks subject matter jurisdiction. (Dkt. 15 at 3.) In response, Plaintiff argues that subject matter jurisdiction is proper under (i) 26 U.S.C. §7422 and (ii) 28 U.S.C. §1346(a)(1). (Dkt. 17 at 4-10.) An analysis of both bases of jurisdiction results in the conclusion that Plaintiff has failed to establish a waiver of sovereign immunity by the United States, and thus the Court is divested of subject matter jurisdiction. See Cominotto v. United States, 802 F.2d 1127, 1129 (9th Cir. 1986) (waiver of sovereign immunity must be demonstrated by the party suing the United States), abrogated on other grounds, Sosa v. Alvarez-Machain, 542 U.S. 692 (2004).

**A.     There is No Subject Matter Jurisdiction Under 26 U.S.C. §7422**[1]

With respect to suits for tax refunds, the United States has – to a certain extent – waived its sovereign immunity. Federal district courts have subject matter jurisdiction over suits against the United States "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. §1346(a)(1). However, this general grant of jurisdiction must be read to incorporate the requirements of §§7422(a) and 6511(a). See United States v. Dalm, 494 U.S. 596, 601-02 (1990). To bring an action for a tax refund in federal district court, a taxpayer must first timely file an administrative claim with

---

[1] Unless otherwise indicated, statutory and regulatory citations are to the Internal Revenue Code, 26 U.S.C., and the regulations promulgated thereunder, 26 C.F.R.

the IRS. See §7422(a).[2] The failure of a taxpayer to file an administrative claim within the time periods imposed by §6511 divests a district court of jurisdiction over the tax refund action. Dalm, 494 U.S. at 601-02; Zeier v. United States, 80 F.3d 1360, 1363 (9th Cir. 1996) ("[T]imely filing of a refund claim [is] a jurisdictional prerequisite to bringing suit.") (quoting Commissioner v. Lundy, 516 U.S. 235, 240 (1996)).

To be "timely," an administrative claim must be filed in accordance with two separate and distinct provisions of §6511. The first provision establishes a "filing deadline": The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." See §6511(b)(1) (incorporating by reference §6511(a)). The second provision defines two "look-back periods": If the claim is filed "within 3 years from the time the return was filed," then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." See §6511(b)(2)(A)(incorporating by reference §6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." See §6511(b)(2)(B) (incorporating by reference §6511(a)). Because the "timely filing of a refund claim [is] a jurisdictional prerequisite to bringing suit" (Lundy, 516 U.S. at 240), Plaintiff must satisfy both the filing deadline and applicable "look-back" period of §6511, in order to demonstrate a waiver of sovereign immunity by the United States. Omohundro v. United States, 300 F.3d 1065, 1067-69 (9th Cir. 2002).

Here, the United States does not dispute that Plaintiff satisfied the filing deadline set forth in §6511(b)(1) because Plaintiff's 1999 tax return, which claimed a refund of $39,986.62, was received by the IRS on the same day, November 24, 2003, Dkt. 16 at ¶2, Ex. A. See

---

[2] Section 7422(a) states: "No suit [for refund] . . . shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations . . . established in pursuance thereof."

1 §6511(b)(1) (taxpayer must file a claim for a refund "within 3 years from the time the return 2 was filed"). However, the United States contends the "look-back" period in §6511(b)(2)(A) 3 has not been met because the tax sought to be refunded was not paid within the three years 4 preceding Plaintiff's claim for a refund (i.e., from November 24, 2003 through November 24, 5 2000). Relying on §6513(a), the United States argues that, to receive a refund of the 6 $39,986.62 paid in 1999, Plaintiff was required to file its return and refund claim within three 7 years of May 15, 2000, the date the $39,986.62 was considered paid.[3] The Court agrees.

8 Here, Nationwide made a $39,986.62 remittance to the IRS towards Plaintiff's 1999 9 federal income tax liability by withholding that sum from a charitable contribution made to 10 Plaintiff on May 7, 1999. See Dkt. 1 at ¶¶8-9. Pursuant to §6513(a), the $39,986.62 11 remittance was considered to be paid on May 15, 2000, the date Plaintiff's 1999 federal tax 12 return was due. See §6513(a). Plaintiff's did not file its 1999 tax return on May 15, 2000 (id. 13 at ¶11), and Plaintiff did not attempt to obtain a six-month extension to file its 1999 return. 14 (Id.) Because Plaintiff filed its 1999 tax return on November 24, 2003 (id. at ¶13; dkt. 16 at 15 ¶2), the relevant look-back period under §6511(b)(2)(A) is three years back from the filing 16 date, or November 24, 2003, through November 24, 2000. The $39,986.62 remittance was 17 considered paid six months earlier, on May 15, 2000, and thus Plaintiff fails to satisfy the look- 18 back period. As a result, the Court is divested of jurisdiction. See Lundy, 516 U.S. at 240.

19 Plaintiff admits that it never filed a request for an extension of time to file its 1999 20 return, but argues that it "should be treated as though it filed an extension since it had no 21 obligation to file a tax return for the 1999 taxable year." (Dkt. 17 at 5-8.) Plaintiff further 22 posits that, if it is treated as having received a six-month extension to file its 1999 return, and 23 the Court applies §7502's "mailbox rule," the look-back period is extended to May 15, 2000,

---

[3] For purposes of §6511(b)(2), "payment of any portion of the tax made before the last day prescribed for the payment of the tax shall be considered made on such last day." §6513(a).

and thus encompasses the $39,986.62 payment. (Dkt. 17 at 8-10.) The Court need not determine whether §7502's mailbox rule applies here because, for four reasons, the Court rejects Plaintiff's request to "waive" §6081's requirement of filing a written extension request.

First, the only case cited in support of Plaintiff's argument, Taylor v. Commissioner, 67 T.C. 1071, 1079-80 (1977), is distinguishable from the situation here. Applying the doctrine of "substantial compliance," the Taylor court held that the taxpayers properly elected the accounting method described in §1251(b)(4), even though they had failed to make an elective statement. Id. In reaching this conclusion, however, the court emphasized that the relevant Treasury Regulation did not specify any particular form in which the election was required to be made and the tax return substantially complied with §1251 by providing sufficient information. Here, by contrast, Plaintiff admits that it did not even attempt to comply with §6081 or Treasury Regulation §1.6081-9, which specially requires tax exempt corporations to comply with three requirements in order to obtain a six-month extension: (i) submit a written request on Form 8868 "on or before the date prescribed for filing the return"; (ii) show "the full amount properly estimated as tentative tax"; and (iii) submit the full remittance of any unpaid amount properly estimated as tentative tax. See §1.6081-9(b). Because Regulation 1.6081-9(b) specifies the particular form in which a tax-exempt corporations are required to seek extensions, and Plaintiff made no attempt to satisfy its requirements, Plaintiff is not even remotely similar to the taxpayers in Taylor.

Second, the doctrine of "substantial compliance" applied in Taylor is not applicable to avoid the requirements of §6081 and Regulation 1.6081-9. The doctrine of "substantial compliance" is an equitable doctrine designed to avoid hardship in cases where a party does all that can reasonably be expected, and can be applied only where invocation thereof would not defeat the policies of the underlying statutory provisions. Sawyer v. County of Sonoma, 719 F.2d 1001, 1008 (9th Cir. 1983). It is well-established that the doctrine of substantial compliance is particularly problematic when deadlines are at issue. See United States v.

Locke, 471 U.S. 84, 101 (1985) ("[f]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced."). The policy underlying §6081 and the regulations promulgated thereunder is to provide strict time and reporting requirements to ensure the prompt filing and payment of income taxes. See §6081 (only reasonable extensions of time for filing returns may be granted by the Secretary); United States v. Boyle, 469 U.S. 241, 250-52 (1985) (reliance on agent who failed to comply with ministerial task of filing tax return by statutory deadline is not reasonable cause). The doctrine of substantial compliance does not apply here because it would permit Plaintiff to avoid the time and reporting requirements established for the purpose of ensuring the prompt filing and payment of taxes. See Shotgun Delivery, Inc. v. United States, 269 F.3d 969, 973-74 (9th Cir. 2001) ("Full compliance is necessary when the requirement relates to the substance of the statute or where the essential purposes have not been fulfilled."). Moreover, Plaintiff does not deny knowledge of the requirement to obtain an extension, but did not even attempt to "do all that can reasonably be expected" to comply with Regulation 1.6081-9(b). See Sawyer, 719 F.2d at 1008 (substantial compliance doctrine unavailable where statutory requirement is clear and known to party invoking the doctrine); see also Boyle, 469 U.S. at 251 ("one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due").

Third, the Court is unable to "waive" the requirement of Plaintiff filing an extension request (dkt. 17 at 7) by applying the equitable doctrine of substantial compliance because to do so would essentially amount to equitable tolling of the timing requirements set forth in §6511. In United States v. Brockamp, 519 U.S. 347 (1997), the Supreme Court held that courts cannot "toll, for nonstatutory equitable reasons, the statutory time (and related amount) limitations for filing tax refund claims set forth in §6511," because Congress did not intend

equitable doctrines to apply to the time limits of §6511.[4]  Id. at 348, 351.  In cases decided subsequent to Brockamp, courts uniformly have held that equitable principles and doctrines cannot toll statutes of limitation in tax refund suits.  See, e.g., RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1462-63 (Fed.Cir. 1998) (applying Brockamp and finding that two year limitations period for tax refund claims when taxpayer files waiver of notice of disallowance does not contain implied exception that would allow United States to be estopped from asserting statute of limitations); Brummett v. United States, 218 F.Supp.2d 1253, 1259 (D.Or. 2002) (equitable tolling principles unavailable to extend time to file refund claims because "[c]ourts consistently read Brockamp broadly to reject all equitable relief").

Finally, Plaintiff cites no authority in support of the argument that, because it was not obligated to file a 1999 tax return, this Court should "waive" the requirement of filing an extension request. (Dkt. 17 at 7.)  As previously discussed, Regulation 1.6081-9 specifically requires even tax-exempt corporations to comply with its requirements in order to be allowed a six-month extension.  The Court is not persuaded by Plaintiff's contentions that a six-month extension "was automatic" and "would not have required a discretionary decision on the part of the Service." (Dkt. 17 at 6.)  To the contrary, the applicable Regulation specifically provides that "[n]o extension of time will be granted under § 1.6081-1 for filing an exempt organization return listed in paragraph (a) of this section *until an automatic extension has been allowed* pursuant to this section." §1.6081-9(e) (emphasis added).  Similarly, a taxpayer's application for an automatic extension is invalid, and any automatic extension is void, if the taxpayer fails to comply with the requirements of the applicable Regulation.  See Crocker v. Commissioner, 92 T.C. 899, 911 (1989) (automatic extensions of filing deadlines previously obtained may be

---

[4] In 1998, Congress amended this law to permit tolling when a taxpayer, like those in Brockamp, is prevented by a disability from seeking a refund.  "Congress's decision to specify further exceptions to the statute of limitations – without adding a general equitable tolling provision – further justifies the Supreme Court's reading of the statute in Brockamp."  Doe v. K.P.M.G., LLP, 398 F.3d 686, 689 (5th Cir. 2005).

held void where the taxpayers fail to properly estimate tax liability).

**B.      There is No Subject Matter Jurisdiction Under 28 U.S.C. §1346**

Relying on "the Martinez exception," Plaintiff contends the Court has subject matter jurisdiction under 28 U.S.C. §1346(a)(1), because the IRS "committed conversion when it collected a tax from [Plaintiff] for which [Plaintiff] was not obligated to pay." (Dkt. 17 at 4-5.) This argument is rejected because the present case is not analogous to a wrongful conversion case, nor is it the type of case in which the Martinez exception applies. In Martinez v. United States, 669 F.2d 568, 569 (9th Cir. 1982), the Ninth Circuit held that the action could be viewed as more closely resembling "a tort claim for conversion" than a refund action because the taxpayer did not receive notice of the Government's intent to levy on his property (cash and a car) before it was seized. The present case is not analogous to a wrongful conversion case because Plaintiff's property was neither seized nor levied upon. Moreover, the Martinez exception provides that a refund may be obtained, even if the taxpayer has not shown an overpayment, if his action so closely resembles an action for tortious conversion that to deny relief would be inequitable. Id. Here, the United States does not contend that Plaintiff fails to satisfy the overpayment requirement. Thus, the Martinez exception does not help Plaintiff.

**C.      Plaintiff Cannot Be Characterized as Having Made a "Deposit"**

In a supplemental brief filed four days after the United States's reply brief, Plaintiff cited Blom v. United States, 97 A.F.T.R.2d 2006-2777 (E.D. Pa. 2006), as authority for its argument that, rather than a payment of taxes, the $39,986.62 remitted to the IRS was merely a "deposit," which it may reclaim without regard to the timing statutes governing refunds of "taxes." (Dkt. 23.) For three reasons, the Court rejects this argument.

First, Plaintiff's deposit theory – that the $39,986.62 remitted as federal income taxes was a "deposit," rather than a "payment" – is inconsistent with the allegations in the Complaint. Plaintiff has not alleged that it voluntarily provided a deposit with the IRS in order to prevent the accrual of tax penalties. Rather, the Complaint alleges that Nationwide

*"withheld federal income tax* from the payment to Plaintiff in the amount of $39,896.62" (dkt. 1 at ¶9, emphasis added).  See Ehle v. United States, 720 F.2d 1096, 1096-97 (9th Cir. 1983) (amounts withheld from a taxpayer's wages were payments of taxes even though the taxpayer intended the withholdings to be "deposits" and had no tax liability); cf. Blom, 97 A.F.T.R.2d at 2006-2779 (executrix's voluntary remittance to IRS constituted a "deposit" because she intended remittance to prevent penalties from accruing).  The "deposit" theory is also foreclosed by the allegations that Plaintiff seeks "a refund of all *tax* collected in 1999 and interest thereon," not the repayment of a deposit see Dkt. 1 at ¶13 and p.4 at ¶(b); see also id. at ¶¶15-16).  In addition, the Complaint was brought pursuant to "26 U.S.C. §7422(a)," a statutory provision that allows suits for the recovery of "internal revenue tax" only, and "28 U.S.C. §1346(a)(1)," which provides jurisdiction over suits to recover "tax" and "penalties."  See Dkt. 1 at ¶4.  "Neither of those statutes authorizes a suit to recover a 'deposit.'" Tosello v. United States, 210 F.3d 1125, 1128 (9th Cir. 2000).

Second, the present case is distinguishable from Blom.  In order to determine whether the taxpayer's remittance in Blom was a deposit or payment, the court applied a "facts and circumstances" test, which considered a number of factors, including the taxpayer's intent when making the remittance, how the IRS treated the remittance upon receipt, and the date of any assessment.  Blom, 97 A.F.T.R.2d at 2006-2779.  The Ninth Circuit, by contrast, has specifically rejected the facts and circumstances test, and instead has held that, "absent specific designation as a deposit, remittances paid at the time the return was due constitute payments." Ott v. United States, 141 F.3d 1306, 1309 (9th Cir. 1998).

Finally, Plaintiff's deposit theory is contrary to evidence in the record.  On its 1999 tax return, which is the basis for this refund action, Plaintiff designated the withheld amount as a "payment," not a "deposit."  See Dkt. 16, Ex. A at p.2, line 44f.

/ / /

/ / /

1   **D.      Conclusion**

2           For the reasons set forth above, the Court lacks subject matter jurisdiction over the
3   present case.

4           Accordingly,

5           **IT IS HEREBY ORDERED GRANTING** the United States's Motion to Dismiss
6   with Prejudice for Lack of Subject Matter Jurisdiction.  (Dkt. 14.)

7           **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment
8   accordingly and terminate this case.

9           DATED this 3rd day of November, 2006.

```
                                  Stephen M. McNamee
                                  United States District Judge
```